**MICHAEL J. KANE**
**MICHAEL KANE & ASSOCIATES, PLLC**
702 W. Idaho St., Suite 1100
Post Office Box 2865 (83701)
Boise, Idaho 83702
Telephone:  (208) 342-4545
Email:  mkane@ktlaw.net
Idaho State Bar No. 2652

ATTORNEYS FOR MERIDIAN DEFENDANTS

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| COLT SEWARD, an individual, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. CV25-00221-BLW |
| | ) | |
| vs. | ) | |
| | ) | |
| THE CITY OF MERIDIAN, an Idaho | ) | REPLY MEMORANDUM IN |
| municipality; CITY OF MERIDIAN | ) | SUPPORT OF |
| POLICE DEPARTMENT, a subsidiary of | ) | DEFENDANTS CITY OF |
| the City of Meridian; OFFICER | ) | MERIDIAN AND CITY OF |
| DONALD HEIDA, individually; | ) | MERIDIAN POLICE |
| OFFICER SEAN MCDONALD, | ) | DEPARTMENT'S MOTION FOR |
| individually; and DOES I through X, | ) | SUMMARY JUDGMENT  (Dkt. 52) |
| unknown individuals and/or entities, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

COME NOW Defendants CITY OF MERIDIAN and CITY OF MERIDIAN POLICE

DEPARTMENT (hereinafter "Defendants"), by and through their attorney of record, Michael J.

Kane of the firm Michael Kane & Associates, PLLC, and herein submit the following Reply

Memorandum in support of their Motion for Summary Judgment.

REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS CITY OF MERIDIAN AND CITY OF MERIDIAN
POLICE DEPARTMENT'S MOTION FOR SUMMARY JUDGMENT (Dkt. 52)– P. 1

# I.

# INTRODUCTION

The City of Meridian does not believe that the compliance strikes in this case violated the Fourth Amendment.  The City submits that if the Court determines this is a jury question, that will not be dispositive as far as the City is concerned.  Without a demonstration of facts indicating that the City, by policy, action, or inaction, caused Mr. Heida to deliver the strikes, no federal claim may be brought against it.  In other words, more than argument is required to send this matter to the jury.

Similarly, state law is clear that municipalities are not liable for the intentional torts of their employees.  Plaintiff appears to agree, but asserts that the City breached some duty toward Plaintiff and can therefore be sued in negligence.  The problem here is that Plaintiff can point to nothing the City did wrong - that was a legal breach of duty - that *caused* the strikes.

**There is No Valid Ratification Claim.**

Plaintiff relies upon *Larez v. City of Los Angeles*, 946 F.2d 630 (9th Cir. 1991), and *Christie v. Iopa*, 176 F.3d 1231 (9th Cir. 1999), as if they stand for the proposition that failure to discipline in a single incident is tantamount to causing the unconstitutional act.  Given that the entirety of the body of law based upon *Monell* is that the municipality in some way must cause the violation by the subordinate to be held liable under § 1983, a review of a past act cannot, by definition, be said to have caused the act. Hence, much more than after-the-fact failure to discipline must be demonstrated by a plaintiff to establish ratification.

> A policymaker's knowledge of an unconstitutional act does not, by itself, constitute ratification. Instead, a plaintiff must prove that the policymaker approved of the subordinate's act. For example, it is well-settled that a policymaker's mere refusal to overrule a subordinate's completed act does not constitute approval. *See Weisbuch v. County of Los Angeles,* 119 F.3d 778, 781 (9th Cir.1997) ("To hold cities liable under section 1983 whenever policymakers

fail to overrule the unconstitutional discretionary acts of subordinates would simply smuggle *respondeat superior* liability into section 1983.") (citation and internal quotation marks omitted); *Gillette,* [*Gillette v. Delmore,* 979 F.2d 1342 (9th Cir.1992)] 979 F.2d at 1348 (stating the same principle).

*Christie v. Iopa*, 176 F.3d 1231, 1239-1240 (9th Cir. 1999).

As pointed out by numerous courts, *Larez* involved much more than a chief of police failing to discipline a single officer for a single act.  An excellent distillation of the law after *Larez* was authored by Judge Shubb in *Jones v. County of Sacramento*, 2010 WL 2843409 (E.D. Cal. 2010).

> The Ninth Circuit has held that a supervisor who did not participate in the unconstitutional conduct can be liable under § 1983 "for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiesce[nce] in the constitutional deprivations of which [the] complaint is made; or for conduct that showed a reckless or callous indifference to the rights of others." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991), (internal quotation marks and citations omitted) (alterations in original).

> At the same time, however, vicarious liability is inapplicable to § 1983 actions and thus "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior." Ashcroft v. Iqbal,* 556 U.S. ——, ——, 129 S.Ct. 1937, 1948, 173 L.Ed.2d 868 (2009). Based on the inapplicability of *respondeat superior* to § 1983, the Supreme Court recently indicated in *Iqbal* that the term "supervisory liability" in the context of § 1983 actions is a "misnomer." *Id.* at 1949. In *Iqbal,* the Court rejected the argument that supervisors could be liable for unconstitutional discrimination based on the supervisors' "'knowledge and acquiescence in their subordinates' use of discriminatory criteria to make classification decisions among detainees.'" *Id.* The Court held that, when a supervisor does not directly participate in the constitutional violation, that supervisor cannot be liable under § 1983 unless the plaintiff shows that the supervisor, through his "own individual actions, has violated the Constitution." *Id.* at 1949.
> ……

> In light of *Iqbal,* it is therefore questionable whether the Ninth Circuit's line of cases holding a supervisor liable for his acquiescence in a constitutional deprivation is still good law. *See, e.g., Arocho v. Nafziger,* No. 09–1095, 2010 WL 681679, at *10 (10th Cir. Mar.1, 2010) (stating that *Iqbal* "casts doubt on the continuing vitality" of the Tenth Circuit's "standard for supervisory liability," which "'requires allegations of personal direction or of actual knowledge and acquiescence' in a subordinate's unconstitutional conduct"); *accord Bayer v.*

*Monroe County Children & Youth Servs.,* 577 F.3d 186, 190 n. 5 (3d Cir.2009); *Maldonado v. Fontanes,* 568 F.3d 263, 274 n. 7 (1st Cir.2009).

….

Unlike this case, however, the expert in *Larez* also presented evidence of a two-year study he had conducted of LAPD complaints, which lead him to conclude that it was " 'almost impossible for a police officer to suffer discipline as a result of a complaint lodged by a citizen' noting that it was as if 'something has to be done on film for the department to buy the citizen's story .' " *Id.* at 647.

Unlike the evidence presently before the court, the evidence in *Watkins* was thus not limited to the supervisor's approval of the conduct after it occurred, but also included prior incidents that were approved The Ninth Circuit subsequently relied on *Larez* to uphold a district court's denial of qualified immunity at the summary judgment stage for a supervisor who had "signed the internal affairs report dismissing [plaintiff's citizen] complaint." *Watkins v. City of Oakland,* 145 F.3d 1087, 1093–94 (9th Cir.1997). In holding that a reasonable jury could find the supervisor liable under § 1983, the court emphasized that the supervisor dismissed the plaintiff's complaint despite evidence of the officer's "use of excessive force contained in the report and evidence of [the officer's] involvement in other police dog bite incidents, and apparently *without ascertaining whether the circumstances of those cases required some ameliorative action to avoid or reduce serious injuries to individuals from dogs biting them." Id.* at 1093 (emphasis added) without taking efforts to reduce the chances that the same officer would engage in similar misconduct in the future.

 The Ninth Circuit again found that a genuine issue of material fact existed with respect to a supervisor's liability in *Blankenhorn v. City of Orange,* 485 F.3d 463 (9th Cir.2007). In that case, while the supervisor did not appear to have reviewed an internal investigation, the plaintiff submitted evidence that the supervisor had approved the officer's prior "personnel evaluations despite three complaints of excessive force having been lodged against [that officer]." *Id.* at 485. The plaintiff also submitted expert testimony from "a former sergeant and lieutenant with twenty-seven years of experience" who opined that "the Department's discipline of [the officer] in all three matters was insufficient." *Id.* After discussing *Larez* and *Watkins,* the court concluded that the evidence the plaintiff presented "could lead a rational factfinder to conclude that [the supervisor] knowingly condoned and ratified actions by [the officer] that he reasonably should have known would cause constitutional injuries like the ones [the plaintiff] may have suffered." *Id.* at 486.

Together, *Larez, Watkins,* and *Blankenhorn* show that the Ninth Circuit has found a supervisor's conduct sufficient to establish the requisite causal link only when the supervisor engaged in at least some type of conduct *before* the unconstitutional incident and the supervisor knew or should have known that his conduct could cause the constitutional violation the plaintiff suffered. *Cf. Phillips*

*v. City of Fairfield,* 406 F.Supp.2d 1101, 1116 (E.D.Cal.2005). More importantly, *Larez, Watkins,* and *Blankenhorn* all preceded *Iqbal,* which rejected the theory of liability relying solely on a supervisor's knowledge of and acquiescence in the unconstitutional conduct. *See Iqbal,* 129 S.Ct. at 1949. Requiring sufficient pre-incident conduct by a supervisor that can fairly be said to be a cause of the constitutional deprivation is thus the only way for *Larez, Watkins,* and *Blankenhorn* to have any precedential value after *Iqbal.*

Consequently, a supervisor's isolated and subsequent ratification of an officer's conduct—even in light of expert testimony suggesting that the supervisor should have sustained the citizen complaint—can never be sufficient to show that the supervisor caused the officer's conduct. In fact, after *Iqbal,* it is questionable whether a supervisor's subsequent acquiescence in an officer's misconduct would even be relevant in determining whether a supervisor is liable under § 1983.

2010 WL 2843409 at *5-7 (emphasis by the court).  Other courts are in accord.

The law does not say that every failure to discipline an officer who has shot someone is evidence of a "whitewash" policy or some other policy of "sham" investigations. The law does not say that, whenever an investigative group accepts an officer's version over a victim's differing version, this acceptance establishes a policy for which a municipality may be held liable under § 1983. If that were the law, counties might as well never conduct internal investigations and might as well always admit liability. But that is not the law. The law clearly requires "something more."

*Kanae v. Hodson*, 294 F. Supp.2d 1179, 1191 (D. Hawaii 2003).  See also *Edenfield  v. Estate of Willets,* 2006 WL 1041724 (D. Hawaii 2006) (the plaintiff must show the decision was the product of a conscious, affirmative choice to ratify the conduct in question. Such a ratification "could be tantamount to the announcement or confirmation of a policy for purposes of *Monell.''*).

To establish requisite culpability …Plaintiffs must show Chief Weatherly was deliberately indifferent to acts by others which he knew or reasonably should have known would cause others to inflict Plaintiffs' alleged constitutional injuries. …Without something more, challenging Chief Weatherly's discipline decisions *after* the incident does not satisfy this deliberate indifference standard.

*Logan v. City of Pullman Police Dept*., 2006 WL 1148727 *4 (E.D. Wash. 2006) (emphasis by the court).  "A policy-maker's finding that an officer's conduct was not wrongful is not, standing alone, sufficient to go to the jury on a ratification theory." *Castillo v. Bush*,  2024 WL 3825206 *11 (D. Oregon 2024).  A supervisor's "opinion that the police officers acted appropriately is not

sufficient to constitute a ratification of any unconstitutional conduct that may have occurred at the scene" of an arrest. *Peschel v. City of Missoula*, 686 F.Supp.2d 1092, 1102 (D. Mont. 2009). "Importantly, the circumstances of the ratification must also demonstrate that the supervisor had previously set in motion acts of others which caused the others to inflict a constitutional injury." *Id.* citing *Larez. See also Leibel v. City of Buckeye*, 364 F.Supp.3d 1027 (D. Ariz. 2019) (same); *Whiting v. California. Hwy. Patrol*, 2020 WL 5753231 (C.D. Cal. 2020) (same).

Without this "setting in motion" component, there can be no causation on the supervisor's part. *Kaur v. City of Lodi*, 263 F. Supp 3d 947 (E.D. Cal. 2017), citing *Jones, supra*. A single "inadequate investigation following the subject incident will not sustain a claim of municipal liability, because the after-the-fact inadequate investigation could not have been the legal cause of the plaintiff's injury." *Feliciano v. City of Miami Beach*, 847 F.Supp.2d 1359, 1367 (S.D. Fla. 2012); *see also, e.g., Haugen v. Brosseau*, 339 F.3d 857, 875 (9th Cir. 2003) ("Haugen cannot, of course, argue that the municipality's later action (or inaction) caused the earlier shooting."); *Mettler v. Whitledge*, 165 F.3d 1197, 1205 (8th Cir. 1999) ("However, even if we are to assume as true that there were shortcomings in the investigation into the January 22 shooting, the shortcomings would not prove the flawed investigation was a moving force behind the deputies' alleged misconduct.").

Here, Plaintiff throws out the word "ratified" in the amended Complaint without any real allegation of fact. That is in and of itself insufficient. *Segura v. City of La Mesa*, 647 F.Supp.3d 926 (S.D. Cal. 2022) (simply reciting the elements of a ratification claim fails under FRCP 12). More to the point, Plaintiff cites *Larez* and *Christie* as if an after-the-fact review of a subordinate's action can bring a supervisor into federal court unless the supervisor finds something helpful to a later plaintiff. As demonstrated above, that is not the law. Further,

Plaintiff's assertions are not factual.  Here, it is clear the first previous head-strike event was under review and not finalized at the time Plaintiff attempted to escape from, and was struck by, Mr. Heida. As has been demonstrated, the two matters caused the chief to require retraining of Mr. Heida, and to reprimand Mr. Heida as to the first strike event. This is the direct opposite of ratification under any interpretation of the cases.  Moreover, there is no plausible way to assert that anything the chief did set in motion events leading to the strike on the Plaintiff. The ratification claims fail as a matter of law.

**There is No Valid Failure to Train Claim.**

Plaintiff asserts a theory which comes down to the following:  because Meridian does not train compliance strikes to the head and in fact discouraged them, ergo there was a failure to train and deliberate indifference because Mr. Heida struck Plaintiff in the face. This is a false premise. As pointed out earlier, the City's policy recognizes that officers may have to engage in unorthodox tactics when the situation demands, but since head strikes are discouraged, what more training could be required?

In *Board of County Commissioners v. Brown,* 520 U.S. 397(1997), the Supreme Court discussed the circumstances under which inadequate training can be the basis for municipal liability. The first is a deficient training program, "intended to apply over time to multiple employees." *Id.* at 407. Plaintiff does not demonstrate or even argue this factor, and, if anything, is clear it was that the discouragement of head strikes was the training of the department.

The second is the continued adherence by policymakers "to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability." *Id.*  Here, the actions of the City were the opposite of conscious

disregard. They required retraining once it became clear about the actions of a single officer on two occasions. Plaintiff does not demonstrate any similar actions by other officers that would have put the City on notice of a potential violation of the Constitution.

Finally, "the existence of a pattern of tortious conduct by inadequately trained employees may tend to show that the lack of proper training, rather than a one-time negligent administration of the program or factors peculiar to the officer involved in a particular incident, is the 'moving force' behind the plaintiff's injury." *Id.* at 407–08.  As has been demonstrated, this case is about "factors peculiar to the officer."  As pointed out previously, two occasions involving a single officer do not establish a pattern that could make an entire police department liable.[1]

Without notice of a need to train in an area that arguably turns out to be inadequate, the municipality is not liable as a matter of law.  What makes the City liable is having an inadequate policy by design or indifference.  This high standard of proof is intentionally onerous for plaintiffs.  *Owaki v City of Miami*, 491 Fed. Supp. 2d 1140, 1158 (S.D. Fla. 2007).  "[T]o adopt lesser standards of fault and causation would open municipalities to unprecedented liability under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 391-392 (1989). Failure to train may amount to a policy of "deliberate indifference," if the need to train was obvious and the failure to do so made a violation of constitutional rights likely. *Id*. at 390 (1989).

In the end, the central question, as in all *Monell* claims, is what did the City do that *caused* Mr. Heida to use a compliance strike in this case? The answer is, nothing the City did set in motion the actions by Mr. Heida against a person in the act of trying to flee arrest. This event was entirely situational. The assertion that the City should have prognosticated the event and trained for it is not reasonable. The only similar incident that predated Plaintiff's escape attempt

---

[1] Plaintiff's attempt to bring in a third incident where a man was attacking and punching another officer, requiring instant response by Heida, is inappropriate. The incident is dissimilar to the other two incidents.

was under review and not finalized by the City. The argument that the City did not act fast enough to reprimand Mr. Heida and therefore caused the compliance strike is unmoored from reality. Moreover, the argument does not state a valid *Monell* claim.

**There Are No Valid State Law Claims Against the City.**

Plaintiff appears to have acquiesced to the point that no valid state claims arising from the battery can be brought against the City. Instead, Plaintiff attempts to rescue the claims of negligent training, retention and supervision of Mr. Heida. As pointed out in earlier briefing, nothing in Plaintiff's complaint complies with pleading rules as to these claims. *Smith v. Glenns Ferry Highway Dist.*, 166 Idaho 683, 462 P.3d 1147, 1161 (2020).

> Under the Idaho Rules of Civil Procedure for pleadings, "[e]ach allegation must be simple, concise, and direct. No technical form is required." I.R.C.P. 8(d)(1). These rules comport with Idaho's notice-pleading requirement, which requires a pleading to put the adverse party "on notice of the claims brought against it." *Hodge for & on behalf of Welch v. Waggoner*, 164 Idaho 89, 96, 425 P.3d 1232, 1239 (2018) (citation omitted). Accordingly, notice pleading requires the complaint to provide "some indication" of the basis for relief, but not always an exact statutory basis or formal cause of action. *Brown v. City of Pocatello*, 148 Idaho 802, 807, 229 P.3d 1164, 1169 (2010).

*Noell Industries, Inc. v. Idaho State Tax Comm'n*, 167 Idaho 367, 371, 470 P.3d 1176, 1180 (2020). Catchall provisions, such as the one in this case, are not a substitute for well-pleaded causes of action.

Setting arguments regarding pleading aside, Plaintiff has offered nothing to the Court by way of expert opinion or established facts that support these claims so as to defeat the summary judgment motion. Plaintiff has not demonstrated, or even argued, that the elements of common law negligence apply here. Where is a duty, recognized by law, requiring the defendant to conform to a certain standard of conduct discussed? Where is there a demonstration of a breach of that duty? Most important, where is the causal connection between the defendant's conduct

and the resulting injury demonstrated?  The answer is:  nowhere.

Listing an assortment of claims in a single paragraph and not providing anything by way of admissible evidence will not suffice to preserve a claim past motion practice.

## CONCLUSION

Plaintiff's approach is very long on argument but devoid of a demonstrable factual dispute.  The central issue here is whether the City caused the strikes.  Here, the Plaintiff invites the Court to adopt the position that because Mr. Heida used strikes once before on a person being arrested, which strikes were under review, that the City should have prognosticated a second event. By not foreseeing a second event, which of itself was highly situational (a man, having been arrested to trying to escape while being recuffed), the City cannot be faulted as violating the Constitution or state law.  "§ 1983 'is not a "federal good government act' for municipalities. Rather it creates a federal cause of action against persons, including municipalities, who deprive citizens of the United States of their constitutional rights." *City of Canton v. Harris, supra,* 489 U.S. at 396 (Brennan, concurring).  No successful suit should be based upon failure to predict conduct by a single employee that might, with the benefit of hindsight, be considered different from what another officer might do in a volatile, dangerous situation.

Summary judgment as to the City of Meridian and its police department is appropriate in this matter.

DATED this 25th day of June, 2026.

MICHAEL KANE & ASSOCIATES, PLLC


BY: /s/ *Michael J. Kane*
MICHAEL J. KANE
Attorneys for Meridian Defendants

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 25th day of June, 2026, I electronically filed the foregoing document with the U.S. District Court.  Notice will automatically be electronically mailed to the following individuals who are registered with the U.S. District Court's CM/ECF System for this action:

**Jeb W. Bond**
jw@attorneysofidaho.com

**Nathan Christopher Beckman**
nathan@melawfirm.net,mary@melawfirm.net

**Michael J Elia**
mje@melawfirm.net,sara@melawfirm.net,Nathan@melawfirm.net

**Michael J. Kane**
mkane@ktlaw.net, kdelisio@ktlaw.net

 /s/ *Michael J. Kane*                                    .
MICHAEL J. KANE